IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 3, 2023

**JOSEPH JEROME GRIGGS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hardeman County**
**No. 18-CR-168   J. Weber McCraw, Judge**

_____

**No. W2023-00100-CCA-R3-PC**

_____

The Petitioner, Joseph Jerome Griggs, appeals from the Hardeman County Circuit Court's denial of his petition for post-conviction relief from his aggravated rape conviction, for which he is serving a twenty-year sentence.  On appeal, he contends that the post-conviction court erred in denying relief on his ineffective assistance of counsel claims.  We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, P.J., and J. ROSS DYER, J., joined.

J. Colin Rosser, Somerville, Tennessee, for the appellant, Joseph Jerome Griggs.

Jonathan Skrmetti, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Mark E. Davidson, District Attorney General; Joe Van Dyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was convicted of the aggravated rape of his thirteen-year-old cousin. Immediately after the rape and while the Petitioner was still in the room, the victim sent a text message to a friend, who called the police.  The Petitioner confessed in a pretrial statement.

The victim testified at the trial about the rape, and the Defendant testified that no rape occurred.  The State offered forensic evidence which corroborated the victim's account.  On appeal, the Defendant argued that (1) the evidence was insufficient because it did not establish that he, and not one of the other people in the room at the time of the rape, committed the offense, and (2) the trial court imposed an excessive sentence.  This

court affirmed the conviction and sentence. *See State v. Joseph Jerome Griggs*, No. W2020-01686-CCA-R3-CD, 2021 WL 4760366 (Tenn. Crim. App. Oct. 12, 2021).

The Petitioner filed a post-conviction petition, which was amended after the appointment of post-conviction counsel. At the post-conviction hearing, the attorney who acted as co-counsel in the Petitioner's conviction proceedings testified that he and trial counsel spoke to the Petitioner "constantly." Co-counsel said he and counsel "begged" the Petitioner to accept one of the two plea offers, the first being for ten years and the second for nine years, based upon the strength of the State's evidence and the favorability of the offers. Co-counsel noted that the State's evidence included the Petitioner's pretrial statement, in which the Petitioner confessed nineteen times, and medical evidence which corroborated the confessions. Co-counsel said that, at the Petitioner's request for his family members be included in the discussions, counsel and co-counsel included the family "to explain to him that he should take these offers." Co-counsel said he was aware that the Petitioner wanted Dr. Lisa Piercey to testify. Other evidence showed that Dr. Piercey was the medical director of the Child Advocacy Center. Co-counsel said that nothing in Dr. Piercey's report "regarding the rape of a girl" was favorable to the defense and that he saw no reason to call Dr. Piercey as a defense witness. Co-counsel said he had "no clue" why the Petitioner thought Dr. Piercey would be a favorable defense witness.

Co-counsel did not recall whether he requested a court-ordered mental evaluation of the Petitioner. Co-counsel said he and trial counsel never had issues communicating with the Petitioner, whom co-counsel described as "lucid" and lacking any apparent mental health issues. Co-counsel did not recall any concerns about the indictment based upon the victim's age of thirteen at the time of the offense, despite the fact that one mode of committing aggravated rape involved raping a child under the age of thirteen. Co-counsel agreed that another mode of committing aggravated rape involved a rape in which the victim suffered bodily injury and that the indictment also alleged bodily injury to the victim. Co-counsel agreed that the plea negotiations had been based upon aggravated rape involving bodily injury to the victim.

Trial counsel testified that she and co-counsel conveyed various plea offers to the Petitioner "[m]ultiple times." She thought the first offer was for twelve years, that a later offer was for nine years, and that a third offer for eight years was discussed but not offered in writing. She said the plea offers had been for a guilty plea to the lesser-included offense of rape. She said she and co-counsel thoroughly reviewed the plea offers with the Petitioner and explained the Petitioner's exposure if he went to trial.

Trial counsel testified that no rape kit was obtained from the victim. Counsel said Dr. Piercey's report stated that no rape kit was needed based upon the physical evidence. Counsel said that she was familiar with Dr. Piercey from other rape cases and described Dr. Piercey as "known throughout the state . . . as an expert" and "definitely not defense

friendly." Counsel said she viewed the prosecutor's having taken Dr. Piercey off the State's witness list as "a plus for" the defense.

Trial counsel testified that the only issue she and co-counsel had with the Petitioner was that the Petitioner would not be honest with them until they confronted him with the State's evidence. Counsel said the Petitioner insisted that the victim was not going to cooperate with the State and that he had not said in his pretrial statement that he had sex with the victim. Counsel said she and her investigator reviewed the video recording of the statement, in which the Petitioner stated repeatedly that he had consensual sex with the victim. Counsel said that all of the victim's statements were consistent and that because the Petitioner would not accept the evidence against him, she arranged with the jail for the Petitioner to view the video recording of his statement. Counsel said that based upon her experience, "there's a difference between somebody having mental health issues and just being in denial about what they're accused of." She said that the Petitioner was articulate, that he was able to read and write letters, and that they discussed his letters. She said the Petitioner believed, based upon a dream, that "God was going to set him free." She said that after the Petitioner went to prison, she began receiving letters from him in different handwriting than his previous letters. She said that at this point, the Petitioner began stating that she should have called Dr. Piercey as a witness and that he wanted the video recording.

When asked about the discrepancy between the indictment charging the Petitioner with a crime against a person under age thirteen and the victim's actual age of thirteen, trial counsel testified that when she noticed the issue, she raised it. She said she advised the Petitioner that "a jury wasn't going to be too concerned about [the victim's] age" because the victim was his first cousin, whose age he would know. She agreed that she and the prosecutor had discussed the case in terms of aggravated rape based upon injury to the victim, rather than the victim's age. She said she advised the Petitioner that the forensic evidence and the Petitioner's confession were compelling proof for the State. She said that the Petitioner "nailed his own coffin shut" with the confession and that she advised him she "didn't have any magic" to overcome the State's "overwhelming" proof. She said she and co-counsel told the Petitioner that they would do their best for him at a trial but that, if convicted, he could expect to spend fifteen to twenty-five years in prison. Documents reflecting written plea offers for ten and nine years and a letter from co-counsel to the Petitioner memorializing a verbal eight-year offer were received as exhibits.

Counsel testified that she never discerned a need for a psychological evaluation of the Petitioner. She described him as typical of accused sex offenders she had represented, in that he did not want to accept his guilt and wanted to manipulate the facts and his attorneys. Counsel noted that a person might have mental health issues but nevertheless be competent for trial.

The Petitioner testified that his attorneys told him that the plea offers were extended because he committed a rape but no rape kit was conducted to determine if "it was aggravated rape or even rape." He said he did not understand how he could be charged with rape without a rape kit. He said his attorneys "[s]omewhat" and "sometimes" explained the terms of the plea offers and his options. He said they met with him two or three times between their appointment as his counsel and his trial.

The Petitioner testified that his attorneys should have sought a mental evaluation because he had a learning disability. He said he was unable to read and write. When asked if he had been given a "diagnosis," he responded that he had been "in resource" in his school years.

The Petitioner testified that he did not see Dr. Piercey's "letter" until he had been in prison for a year. He said that based upon the letter, he should have been charged with no greater offense than "sexual assault." He said Dr. Piercey would have been a favorable defense witness. Dr. Piercey's report was received as an exhibit. In pertinent part, the report provided the following in the assessment section: "Child sexual abuse. The finding of no acute trauma or residua of trauma is to be expected, given the child's description of the event, length of time since the episode, and her post-pubertal status." The report stated that the examination occurred on April 9, 2018 and that the reported rape occurred on approximately March 20, 2018.

The Petitioner testified that he did not accept the eight-year offer because he was not guilty. When asked how many times he had admitted in his pretrial statement that he had sex with the victim, he said he "was stumbling over [his] words" because he was angry and upset.

Trial counsel was recalled and testified that she had not heard until the Petitioner's hearing testimony that the Petitioner was illiterate. She said he sent her several letters from jail. She said he sent letters in different handwriting from prison. She said the Petitioner signed the letters sent from prison. She said that even if the Petitioner had not written the letters, he was familiar with their contents when she discussed them with him. She said she and co-counsel verbally communicated the eight-year offer to the Petitioner on the Sunday before the trial.

The Petitioner was recalled and testified that two other inmates wrote the letters the Petitioner sent to counsel. He said he signed them.

In its order denying relief, the post-conviction court found that the Petitioner failed to establish his claims by clear and convincing evidence, The court found that the Petitioner failed to show that trial counsel and co-counsel performed deficiently and that the Petitioner suffered prejudice from counsel and co-counsel's alleged deficiencies.

-4-

Specifically, the court found that counsel and co-counsel "met with petitioner and discussed the case, including possible defenses and negotiated plea opportunities" and that counsel and co-counsel "presented a reasonable defense for the petitioner but a jury did not accept the defense." This appeal followed.

The Petitioner contends that the post-conviction court erred in denying relief for his ineffective assistance of counsel claims. Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed ones based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In his brief, the Petitioner argues that the post-conviction court erred in denying relief based upon claims that his attorneys were ineffective because they failed to: meet with him and thoroughly explain the plea offers and his potential sentencing exposure if he went to trial, request a mental evaluation, address an error in the indictment, and call Dr. Piercey as a defense witness. Counsel and co-counsel testified that they met with the Petitioner several times and exhaustively discussed the plea offers and his trial exposure. The Petitioner testified to minimal contact with his attorneys. The Petitioner testified that he thought he should have received a mental evaluation based upon his history of a learning disability, and both counsel and co-counsel testified that the Petitioner was able to communicate with them and that they did not have any reason to believe a mental evaluation was appropriate. Counsel testified that the Petitioner simply refused to accept the reality of the situation in which he found himself. The Petitioner testified that his attorneys failed to challenge the indictment as defective because it alleged that the victim was under age thirteen, despite her being older. Co-counsel testified that the indictment also alleged that the victim suffered bodily injury during the course of the rape, another mode of committing aggravated rape. The Petitioner testified that his attorneys failed to call Dr. Piercey as a defense witness. Co-counsel testified that Dr. Piercey's report did not contain information favorable to the defense, and counsel said Dr. Piercey was well-known as not being defense-oriented. Dr. Piercey's report noted a lack of physical findings, as would be expected due to the passage of time between the rape and the victim's examination. Notably, the Petitioner did not call Dr. Piercey as a witness at the post-conviction hearing.

The post-conviction court credited the State's evidence over that offered by the Petitioner, and the court found that the Petitioner failed to carry his burden of proving his claims by clear and convincing evidence. The Petitioner's argument essentially invites this court to reweigh the evidence. We must defer to the post-conviction court's findings of fact "unless the evidence in the record preponderates against those findings." *Henley*, 960 S.W.2d at 578; *see Fields*, 40 S.W.3d at 456-57. Upon review, we conclude that the evidence does not preponderate against the post-conviction court's findings. Further, we conclude that the court correctly applied the law to its factual findings. *See Fields*, 40 S.W.3d at 457-58.

The Petitioner is not entitled to relief. In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE